## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Jenette Ryan, Clara Clark,
Jose Gonzalez, Sandra Gonzalez,
Betty Sue Johnson, and Doretha
Moncrief,

      Plaintiffs,

v.

Guardian Automotive Corporation,
SRG Global, Inc., Michael W.
Anderson, Nancy Betti, Caanan M.
Stewart, Stephen Robert Farrell, and
John Does 1-10,

      Defendants.

Civil Action No. <u>1:21-cv-04929-ELR</u>

## <u>NOTICE OF REMOVAL</u>

These cases began in 2015 when counsel for Plaintiffs filed a lawsuit against

Guardian Automotive Corporation and SRG Global, Inc. (together, "SRG Global")

in the United States District Court for the Northern District of Georgia on behalf of

Willie Jean Bell.  *See Willie Jean Bell, et al. v. Guardian Automotive Corp., et. al*,

No. 1:15-cv-1350 (N.D. Ga.) (the "Federal Lawsuit").  Shortly after Ms. Bell filed

the Federal Lawsuit, she amended her complaint to assert claims on behalf of a

putative class of property owners in and around Settlers Grove neighborhood,

which is a neighborhood near SRG Global's facility in Covington, Georgia.  (Dkt.

17.)  The putative class included Plaintiffs.  However, following 18 months of

class-related discovery, and after fully briefing a motion for class certification, Ms.

Bell, without explanation or justification, withdrew her certification motion and

voluntarily dismissed her class claims.[1]  (Dkt. 94, 95.)

Immediately thereafter, and seeking a more favorable forum for their claims,

Plaintiffs filed the current lawsuits in Gwinnett County State Court, using—quite

literally—copy-and-pasted complaints from the Federal Lawsuit.[2]  But this time, in

an attempt to defeat diversity jurisdiction and keep the cases out of federal court,

Plaintiffs sued four current or former employees of SRG Global: (1) Michael

Anderson, (2) Nancy Betti, (3) Caanan Stewart, and (4) Stephen Farrell (together,

the "Individual Defendants").

Because the inclusion of the Individual Defendants was a textbook example

of fraudulent joinder, and because the parties had already litigated identical claims

---

[1] Because Plaintiffs' abrupt dismissal was an attempt to play venue games and restart their cases after more than two years of litigation in what they believed to be a more favorable forum, SRG Global opposed Plaintiffs' withdrawal of its motion for class certification and voluntary dismissal of the class claims.  (Dkt. 96.)  While the Court ultimately permitted Plaintiffs' untimely dismissal, it recognized the prejudice Plaintiffs' counsels' tactics caused and awarded SRG Global $237,248.81 in class-related attorneys' fees and expenses.  (Dkt. 98, 134.)

[2] *See Adams v. Guardian Automotive Corp.*, No. 17 C 04652-6 (Gwinnett Cnty. St. Ct.); *Mobley, et al. v. Guardian Automotive Corp.*, No. 17 C 04653-6 (Gwinnett Cnty. St. Ct.); *Thomas-Shepard, et al. v. Guardian Automotive Corp.*, 17 C 04654-6 (Gwinnett Cnty. St. Ct.) (collectively, the "State Cases").

for over two years, SRG Global removed the State Cases back to this Court.  (*See Mobley, et al. v. Guardian Automotive Corp., et al.*, No. 1:17-cv-3343-ELR, Dkt. 1.)  However, following Plaintiffs' motion to remand, the Court found that on the face of the Complaint, it was not apparent that Plaintiffs were seeking more than $75,000 in damages.  Finding no allegations in the complaints specifying any particular damage amount, the court remanded the State Cases to Gwinnett County State Court.  (Dkt. 27.)

Now, on remand, after deposing Plaintiffs, **it is absolutely clear that this Court has diversity jurisdiction over these cases and that Plaintiffs' addition of the Individual Defendants was fraudulent joinder**.  For example, discovery has filled in the gaps Plaintiffs intentionally left in their pleadings regarding their damages and the amount in controversy.  Plaintiffs have testified that their properties have been completely devalued as a result of the alleged environmental conditions on their properties.  Recent appraisals from Paige Alexander, a certified real estate appraiser located in Covington, Georgia, show that Plaintiffs' properties are worth more than $75,000.  As a result, Plaintiffs' claims for diminution in value of their properties alone satisfies the jurisdictional amount—Plaintiffs have also demanded damages for loss of use and enjoyment of their properties, personal injuries, punitive damages, and attorneys' fees and expenses of litigation.

As for fraudulent joinder, Plaintiffs have testified they do not know who the

3

Individual Defendants are, if they worked at SRG Global, why they sued them, or what they allegedly did wrong.  In fact, Plaintiffs were surprised to hear that they had sued the Individual Defendants and even denied having done so.  In other words, the actual plaintiffs with standing to bring their claims—and not their lawyers—have no knowledge whatsoever about their claims or why they even brought them.  While such testimony raises significant Rule 11 concerns, there is no stronger or more direct proof that Individual Defendants were added by Plaintiffs' lawyers solely for the purpose of escaping this Court's jurisdiction.

Based on this information, and pursuant to 28 U.S.C. §§ 1332, 1441, 1446(b)(3), and 1446(c)(1), SRG Global removes this action from the State Court of Gwinnett County to the United States District Court for the Northern District of Georgia because recently discovered facts establish that complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## BACKGROUND

### Plaintiffs' Claims Were Previously Litigated in this Court for Six Years

1.

On April 23, 2015, Willie Jean Bell filed suit against Guardian and SRG Global in the Federal Lawsuit alleging claims for trespass, nuisance, and negligence arising out of an alleged release of trichloroethylene ("TCE") from

4

SRG Global's facility in Covington, Georgia.

2.

On October 2, 2015, Ms. Bell amended her complaint to add David Mitchell as a plaintiff, and to assert claims on behalf of a broad class of property owners within the Settlers Grove subdivision in Covington, Georgia.  (Dkt. 17.)[3]

3.

On October 3, 2016, Ms. Bell and Mr. Mitchell filed their Motion for Class Certification.  (Dkt. 50.)  Plaintiffs were members of the putative class.

4.

However, on June 5, 2017, Ms. Bell and Mr. Mitchell voluntarily withdrew their Motion for Class Certification and filed a motion for leave to amend their complaint to dismiss the class allegations.  (Dkt. 94, 95.)

5.

On July 6, 2017, the Court granted Plaintiffs leave to amend their complaint. (Dkt. 98.)

---

[3] The Court may take judicial notice of documents filed in other actions and other public records in the context of removal petitions.  *See FDIC v. N. Savannah Props., LLC*, 686 F.3d 1254, 1257 n.1 (11th Cir. 2012) (affirming removal based, in part, on court's taking judicial notice of documents filed in state court proceeding); *McClain v. Bank of Am. Corp.*, No. CV 411-305, 2013 WL 1399309, at *5 n.5 (S.D. Ga. Apr. 5, 2013) (taking judicial notice of property tax record to determine amount in controversy requirement for removal purposes).

6.

As mentioned above, the Court awarded SRG Global $237,248.81 in class-related attorneys' fees and expenses to address the prejudice caused by Plaintiffs' counsels' litigation tactics.  (Dkt. 98, 134.)

7.

Rather than be added as named plaintiffs to the Federal Lawsuit, Plaintiffs fled to state court and commenced the States Cases in the State Court of Gwinnett County on August 1, 2017 (the "State Cases").  A copy of the Complaint is attached as Exhibit 1.[4]

8.

Because the allegations and claims in the State Cases were *identical* to those in the Federal Lawsuit, on September 1, 2017, SRG Global filed a Notice of Removal, removing this case and two related cases to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1441(b)(1).  *See Adams, et al. v. Guardian Automotive Corp.*, No. 1:17-cv-3345-ELR (N.D. Ga.) (Dkt. 1); *Mobley, et al. v. Guardian Automotive Corp.*, No. 1:17-cv-3343-ELR (N.D. Ga.) (Dkt. 1); *Thomas-Shepard, et al. v. Guardian Automotive Corp.*, 1:17-cv-3342-ELR (N.D. Ga.) (Dkt. 1).

---

[4] On August 27, 2021, Plaintiffs Michael Mobley, Bonnie Mobley, Ricky Horton, and Gurlie Horton were dismissed without prejudice from this lawsuit.  (Ex. 14.)

9.

On October 2, 2017, Plaintiffs filed their Motion to Remand.  *See Adams, et al. v. Guardian Automotive Corp.*, No. 1:17-cv-3345-ELR (N.D. Ga.) (Dkt. 9); *Mobley, et al. v. Guardian Automotive Corp.*, No. 1:17-cv-3343-ELR (N.D. Ga.) (Dkt. 9); *Thomas-Shepard, et al. v. Guardian Automotive Corp.*, 1:17-cv-3342-ELR (N.D. Ga.) (Dkt. 9).

10.

On July 17, 2018, the Court entered its Order on Plaintiffs' motion to remand.  Finding that on the face of the Complaint there was not sufficient information to determine whether Plaintiffs were seeking damages in excess of $75,000.00, the Court ultimately remanded the cases.  *See Adams, et al. v. Guardian Automotive Corp.*, No. 1:17-cv-3345-ELR (N.D. Ga.) (Dkt. 27); *Mobley, et al. v. Guardian Automotive Corp.*, No. 1:17-cv-3343-ELR (N.D. Ga.) (Dkt. 27); *Thomas-Shepard, et al. v. Guardian Automotive Corp.*, 1:17-cv-3342-ELR (N.D. Ga.) (Dkt. 27).

## BASIS FOR REMOVAL

### 28 U.S.C. § 1446(b)(3)

11.

Pursuant to 28 U.S.C. § 1446(b)(3), SRG Global files this Notice of Removal within thirty (30) days of its receipt of "other paper" from which it could

first be ascertained the case was removable.

12.

On September 14, 2021, SRG Global received a copy of the deposition transcript of Jenette Ryan.  During her deposition, Ms. Ryan testified that she had no basis whatsoever for her claims against the Individual Defendants:

Q:    Now, why did you sue Michael Anderson?

**A:    What?**

Q:    Are you aware that you have sued someone by the name of Michael Anderson in this case?

**A:    My lawyers got a job to do, and they did it.**

[. . .]

Q:    What do you know about Mr. Anderson?

**A:    I don't know nothing about him.  Okay?**

Q:    Okay.  Do you know what his role is at SRG Global?

**A:    [No response.]**

Q:    Do you know what his role is at SRG Global?

**A:    The lawyers decided to do that.  Okay?  That's what we pay a lawyer for.**

Q:    Do you have any person information about who Mr. Anderson is or his involvement—

**A:    No.**

[. . .]

Q:    What about Mr. Farrell?  You also sued an individual by the name of Mr. Farrell.  Do you know who Mr. Farrell is?

**A:    No, I don't; but my lawyer does.**

[. . .]

Q:    But, again, with Mr. Farrell do you have any information on what you claim he did wrong?

A:   **Mister, I don't—if I see whoever it is, I don't even know who the hell it is; and I don't want to know.**

[. . .]

Q:   Okay.  Now, what about Nancy Betti?  You also sued an individual by the name of Nancy Betti.  Do you know Ms. Betti?

A:   **No, I don't.**

Q:   Have you ever met Ms. Betti?

A:   **No, I don't.**

Q    Do you know anything about Ms. Betti?

A:   **No; but my lawyer—but my lawyer do.**

Q:   Okay.  Do you have any personal information on what role she had at SRG Global?

A:   **[No response.]**

[. . .]

Q:   Now, if I ask all these same questions—we haven't gotten Mr. Stewart yet; but if I ask all those same questions, are you going to tell me that you don't know anything about Mr. Strwart, you don't [know] what he did wrong, what role he had [at] SRG Global?

A:   **Yes, sir.  Ask my lawyer.**

[. . .]

Q:   So just to be clear then, you have no idea who any of the Individual Defendants are in this case or why you've sued them, correct?

A:   **I said ask my lawyers.**

[. . .]

Q:   Okay.  But do you have any information that they actually were involved or did anything?

A:   **I have no information on me.**

Q:   Do you mean on them?  You don't have any information about them, correct?

A:      **[No response.]**

Q:      Is that correct?

A:      **No, I don't.**

Q:      Okay.  So you have no facts to support your claims against either Mr. Anderson, Mr. Farrell, Ms. Cormican, and Mr. Stewart, correct?

A:      **[No response.]**

[. . .]

Q:      I need a yes or no answer, Ms. Ryan.  Do you have any facts whatsoever—

A:      **I have nothing.**

(Deposition of J. Ryan, attached as <u>Exhibit 2</u>, at 74-75, 75-76, 77, 78, 80, 81, 82, 83, 86.)

13.

Ms. Ryan also testified that, in her opinion, her home had been completely devalued by environmental conditions she alleges were caused by SRG Global:

Q:      I'm asking you are you claiming that your house has been devalued?

A:      **My house value has gone away down to nothing.**

(*Id.* at 91 (emphasis added).)

14.

On November 30, 2021, SRG Global received a copy of an appraisal from Ms. Paige Alexander of Alexander Appraising.  (11/30/2021 Appraisal of Jenette Ryan Property, attached as <u>Exhibit 3</u>.)  Ms. Alexander appraised Ms. Ryan's property to be worth $135,000.00.

10

15.

The deposition transcript of Ms. Ryan and the appraisal of Ms. Ryan's

property constitutes "other paper from which it may first be ascertained that the

case is one which is or has become removable."  28 U.S.C. § 1446(b)(3) states that

"if the case stated by the initial pleading is not removable, a notice of removal may

be filed within thirty days after receipt by the defendant, through service or

otherwise, of a copy of an amended pleading, motion, order or other paper from

which it may first be ascertained that the case is one which is or has become

removable."  *See also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 n.62 (11th

Cir. 2007) ("Courts have not articulated a single test for identifying 'other paper,'

but numerous types of documents have been held to qualify.  They include:

responses to requests for admissions; settlement offers; interrogatory responses;

deposition testimony; demand letters; and email estimating damages."); Charles

Alan Wright et al., 14C Fed. Prac. & Proc. Juris. § 3731 (Rev. 4th ed.) ("The

federal courts have given the reference to 'other paper' an expansive construction

and have included a wide array of documents within its scope.  Federal judges are

inclined to interpret the statute in keeping with its intended purposes of assuring

that a defendant has an opportunity to assert the Congressionally bestowed right to

remove upon receiving notice that the right exists in a particular case.").

<u>28 U.S.C. § 1446(c)(1)</u>

16.

In addition, according to 28 U.S.C. § 1446(c)(1), "[a] case may not be removed under section (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Bad faith applies when "a defendant can demonstrate (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *See CMR Constr. & Roofing, LLC v. Hartford Ins. Co. of the Midwest*, No: 2:20-cv-695, 2021 WL 2632374, at *3 (M.D. Fla. June 25, 2021) (quoting *Hajdasz v. Magic Burgers, LLC*, 805 F. App'x 884, 890 (11th Cir. 2020) (internal quotations omitted)); *Pub Serv. Towers, Inc. v. Best Buy Stores, L.P.*, 28 F. Supp. 3d 1313, 1315 (M.D. Ga. 2014) (examining whether plaintiff "intentionally concealed the amount of damages to avoid removal").

17.

Here, Defendants have diligently pursued their rights in attempting to ascertain (1) the bases for Plaintiffs' claims against the Individual Defendants and (2) evidence of Plaintiffs' damages. Defendants have faced "extraordinary circumstances," including Plaintiffs' repeated, non-responsive and evasive responses to written discovery and deposition questioning regarding Plaintiffs'

12

alleged damages, the amount in controversy, and the factual basis of Plaintiffs'

claims against the Individual Defendants.

18.

SRG Global has diligently sought discovery on the factual basis of

Plaintiffs' claims, including, but not limited to, the factual basis for Plaintiffs'

claims against the Individual Defendants and Plaintiffs' demand for damages.

Following attempts to resolve the cases, on July 16, 2019, SRG Global served on

Plaintiffs its First Interrogatories, which are attached as Exhibit 4.  Numerous of

SRG Global's interrogatories sought information supporting Plaintiffs' claims for

damages:

- Interrogatory No. 13 requested Plaintiffs "[i]dentify any persons who may have knowledge of any appraisal, valuation, leasehold value, cost to repair, or economic or financial worth of your Property or other properties in the related actions."  (Ex. 4 at 7.)

- Interrogatory No. 14 requested Plaintiffs "[i]dentify all costs, damages or expenses incurred or to be incurred by you which you contend are required as a result of environmental conditions at your Property."  (*Id.*)

- Interrogatory No. 15 requested Plaintiffs "[s]tate whether you contend that you or any plaintiff in the related actions has suffered any personal injury as a result of any alleged act or omission by Defendants[.]"  (*Id.*)

- Interrogatory No. 16 requested Plaintiffs "[s]tate with specificity each and every fact in support of your contention in Paragraph 37 of the Complaint that 'Plaintiffs have each suffered substantial loss of their unencumbered use and enjoyment of their homes.'"  (*Id.* at 8.)

- Interrogatory No. 18 requested Plaintiffs' identify information supporting their claim for attorneys' fees and expenses, including the total amount of fees and expenses incurred to date, a detailed breakdown of the hourly

rate of each timekeeper, number of hours billed by each timekeeper, etc. (*Id.*)

In addition, SRG Global also served its First Requests for Production of Documents on Plaintiffs on July 16, 2019, which are attached as Exhibit 5. Again, numerous of SRG Global's requests sought information supporting Plaintiffs' claims for damages:

- Request No. 5 requested "[a]ll documents that evidence or reflect any improvements, changes, additions, repairs renovations, or other changes or improvements made by you to your Property within the last five (5) years." (Ex. 5 at 6.)

- Request No 14 requested "[a]ll documents that evidence or reflect any appraisal, estimate, valuation, cost of repair, or cost to rebuild your Property or any other property at issue in this action." (*Id.* at 8.)

- Request No. 18 requested "[a]ll documents that evidence, reflect, or relate in any way to the facts upon which you base your contention in Paragraph 37 of the Complaint that 'Plaintiffs have each suffered substantial loss of their unencumbered use and enjoyment of their homes and a loss in the value of their homes." (*Id.*)

- Request No. 19 requested "[a]ll documents that evidence, reflect, or relate in any way to the facts upon which you base your contention in Paragraphs 31, 39, and 49 of the Complaint that 'Defendants have acted in bad faith.'" (*Id.* at 9.)

- Request No. 20 requested "[a]ll documents that evidence, reflect, or relate in any way to the facts upon which you base your contention in Paragraphs 32, 40, and 50 of the Complaint that Plaintiffs are 'entitled to recover their expenses of litigation, including reasonable attorney fees as provided by Ga. Code. Ann. § 13-6-11." (*Id.*)

- Request No. 21 requested "[a]ll documents that evidence, reflect, or relate in any way to the facts upon which you base your contention in Paragraphs 33, 41, and 51 of the Complaint that Plaintiffs are 'entitled to recover exemplary damages sufficient to punish the Defendants for their past conduct, and to deter Defendants from further like wrongful conduct in the future." (*Id.*)

- Request No. 24 requested "[a]ll documents that evidence, reflect, or relate in any way to the formula, process, or method of computation of any alleged damages sustained by you or any plaintiff in the Related Actions as a result of the matters alleged in the Complaint."  (*Id.*)

19.

Plaintiffs served their responses on April 12, 2021.  Plaintiffs' responses, which are attached as Exhibit 6 (Ms. Ryan's Responses to SRG Global's First Interrogatories) and Exhibit 7 (Ms. Ryan's Responses to SRG Global's First Requests for Production of Documents), were non-responsive and did not provide the requested information.  For example, in response to Interrogatory No. 14, Plaintiffs responded that they "have yet to ascertain the damages and expenses they have incurred or will incur."  (Ex. 6 at 7.)  Elsewhere, Plaintiffs objected to responding because "discovery is an early stage and Ms. Ryan's counsel maintains that Ms. Ryan is not required at this time to plead and prove Plaintiff's entire case."  (*Id.* at 2, 5.)

20.

Because these responses did not comply with Plaintiffs' obligations under the Georgia Civil Practice Act, on June 3, 2021, SRG Global served a meet and confer letter on Plaintiffs, which is attached as Exhibit 8.

21.

On June 15, 2021, Plaintiffs responded to SRG Global's meet and confer

15

letter.  In their response, counsel for Plaintiffs objected to Defendants'
interrogatories regarding damages on the basis that they sought the mental
impressions of the attorneys.  (Plaintiffs' June 15, 2021 Letter, attached as Exhibit
9 at 3.)

22.

Plaintiffs served "supplemental responses" on June 29, 2021, which are
attached as Exhibit 10.  Plaintiffs' supplemental responses regurgitated the same
meritless objections and provided no additional factual information to support their
claims against the Individual Defendants or substantiate any amount of damages.
Instead, Plaintiffs stated only that an expert's report would be provided in the
future and that "[t]he amounts of these costs damages and expenses are determined
by the enlightened conscience of the Jury."  (*Id.* at 2-3, 4.)

23.

Because Plaintiffs' supplemental responses were still deficient, the parties
held a meet and confer conference on June 30, 2021 to address Plaintiffs'
responses.  At that conference, counsel for Plaintiffs stated they would provide
additional supplemental responses.

24.

On August 13, 2021, Plaintiffs served their second supplemental discovery
responses, which are attached as Exhibit 11.  Plaintiffs' supplemental responses

16

maintained their objections did not provide the information requested but stated only that appraisals would be provided at some unspecified time in the future.

25.

Plaintiffs' evasive and bad faith efforts to frustrate discovery on any facts supporting their claims for damages and claims against the Individual Defendants has continued in every deposition taken to date.

26.

For example, during Ms. Ryan's deposition, Ms. Ryan testified that she did not know who the Individual Defendants were, why she sued them, what their connection to this case was, or even what they allegedly did wrong.  (Ex. 2 at 74-75, 75-76, 77, 78, 80, 81, 82, 83, 86.)

27.

Ms. Ryan is not an outlier.  Her co-plaintiffs, Cheryl Morgan and Emma Davis, testified the same.  Ms. Morgan testified "**I don't know what Michael Anderson did wrong. I only know what my lawyer told me.**"   (Deposition of C. Morgan, attached as <u>Exhibit 12</u>, at 131 (emphasis added).)  Ms. Davis similarly testified that she had no basis for her claims against the Individual Defendants:

Q:   Now, why did you sue Michael Anderson [one of the Individual Defendants], Ms. Davis?

**A:   The lawyers must have sued him.  I didn't.**

Q:   Well, you're actually the plaintiff, so you're the one who sued them.  Why did you sue Michael Anderson?

A:     **The lawyers decided that.**

Q:     Okay.  Do you even know Mr. Anderson?

A:     **No.**

Q:     What was his role in SRG Global?

A:     **I don't know.**

Q:     Do you even know if he worked for SRG Global?

A:     **No, I don't know that either.**

Q:     Okay.  Why did you sue Stephen Farrell [another Individual Defendant]?

A:     **I didn't sue nobody.  The lawyers had to do it.**

Q:     Okay.  What about Nancy Betti or Nancy Cormican [another Individual Defendant]?

A:     **I don't know those either.**

Q:     Or Caanan Stewart [another Individual Defendant]?

A:     **No.**

Q:     What facts do you have to support your claims against Michael Anderson?

A:     **Because the lawyers, they pursued the case.**

[. . .]

Q:     Please tell me everything you know about Michael Anderson and why you sued him.

A:     **I can't tell you nothing about Michael Anderson.  I told you I didn't know him.**

Q:     What about Stephen Farrell, what facts do you have to support your claims against Mr. Farrell?

A:     **I don't know nothing about him either.**

Q:     What facts do you have to support your claims against Nancy Cormican?

A:     **I don't know nothing about her either.**

Q:     What facts do you have to support you claims against Caanan Stewart?

**A:      I already told you I don't know him.**

[. . .]

Q:      Ma'm, my question is:  Do you have any information as to why
        you believe Mr. Anderson, Mr. Farrell, Ms. Cormican or Mr.
        Stewart did anything wrong?

**A:      I don't have to have that information.  Ask my lawyers
        about it, okay?  And I'm done with you.  I'm closing it out.**

(Deposition of E. Davis, attached as <u>Exhibit 13</u>, at 73-74, 75-76, 77.)  In fact, Ms.

Davis, like Ms. Ryan, was surprised to learn that she had even sued these

individuals:

Q.      Now, why did you sue Michael Anderson, Ms. Davis?

**A.      The lawyers must have sued him. I didn't.**

Q.      Well, you're actually the plaintiff, so you're the one who sued
        them. Why did you sue Michael Anderson?

**A.      The lawyers decided that.**

[. . .]

Q.      Okay. Why did you sue Stephen Farrell?

**A.      I didn't sue nobody. The lawyers had to do it.**

Q.      Okay. What about Nancy Betti or Nancy Cormican?

**A.      I don't know those either.**

Q.      Or Canaan Stewart?

**A.      No.**

Q.      What facts do you have to support your claims against Michael
        Anderson?

**A.      Because the lawyers, they pursued the case.**

(*Id.* (Davis Dep.) at 73, 74.)

19

28.

But Plaintiffs' lawyers are not parties to this action.  The only parties with standing to bring legal claims have no idea who the Individual Defendants, what they allegedly did wrong, or why they even sued them.  Indeed, Plaintiffs have no knowledge about any of their claims apart from what their lawyers have told them:

> Q:    Now, what did you know about SRG Global and Guardian before you met your lawyers for the first time?
>
> A:    All I know is that they made car parts.  What kind of car parts, I don't even know.
>
> Q:    Okay.  So you didn't know about any of this stuff before you met your lawyers for the first time, correct?
>
> A:    Yes.

(Ex. 2 (Ryan Dep.) at 123; *see also* Ex. 13 (Davis Dep.) at 97 (Q: Now before you met your lawyers for the first time, what did you know about the SRG Global facility? A: **I didn't know anything about it.** Q: And what have you learned about the SRG Global facility other than what your lawyers have told you? A: **Not a durn thing**.) **(**emphasis added).**)**

29.

Regarding damages, Ms. Ryan provided evasive answers time and time again to Defendants' repeated questions to ascertain the amount of damages she is seeking, deferring solely to her lawyers on the matter of damages:

> Q:    How much money are you going to be asking for your worry and stress?

A:   I don't know.

Q:   Okay.  More than $500?

A:   I just said I don't know.

Q:   I'm trying to get a sense—this is the only time that I can ask these questions, so the next time—I mean, I don't—I don't know if you're going to show up to the jury and ask for, you know, whatever the amount is going to be, so I'm just trying to get some sense of how much you're going to be asking for.  Do you have any number in your head of what you would be happy with to walk away from this case?

A:   **No, I don't.  The lawyers will decide that.  They will take care of that for me.**

Q:   **So are the lawyers the only ones with information as to how much money you're going to be asking from the jury?**

A:   **Yes.**

(Ex. 2 (Ryan Dep.) at 92-93 (emphasis added); *see also* Ex. 13 (Davis Dep.) at 97-98 (testifying similarly that she was relying solely on her lawyers to determine her damages).)

30.

Plaintiffs' gamesmanship—including the lack of any factual basis whatsoever for their claims against the Individual Defendants and their evasive responses to discovery and deposition questioning—establish the requisite bad faith under 28 U.S.C. § 1446(c)(1).

31.

Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of all process, pleadings, and orders served in the State Cases to date are attached to this Notice

of Removal as <u>Exhibit 14</u>.

32.

Pursuant to 28 U.S.C. § 1446(d), SRG Global filed this Notice of Removal

with this Court, are serving a copy of this Notice upon the parties of record and

will promptly file a copy in the State Court of Gwinnett County.

## DIVERSITY JURISDICTION EXISTS UNDER
## 28 U.S.C. §§ 1332(a) and 1441(a)

33.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is

complete diversity of citizenship between Plaintiffs and SRG Global, who are the

only proper defendants to the action, and the amount in controversy exceeds

$75,000.

<u>The Citizenship of Plaintiffs, SRG Global,
and Guardian Automotive Corporation Is Diverse</u>

34.

As set forth in the Complaint, Plaintiffs are citizens and residents of Newton

County, Georgia.  (Ex. 1, ¶¶ 1–7.)

35.

Neither SRG Global nor Guardian Automotive Corporation is a citizen of

the State of Georgia.

36.

According to the State Complaint, Guardian "is a foreign, for-profit corporation incorporated under the laws of the State of Michigan." (*Id.* ¶ 8.) Guardian's headquarters is in Michigan. Thus, Guardian's principal place of business is in Michigan, and it is, therefore, a citizen of the state of Michigan.

37.

According to the State Complaint, SRG Global "is a foreign, for-profit corporation incorporated under the laws of the State of Delaware." (*Id.* ¶ 9.) SRG Global's headquarters is in Michigan. Thus, SRG Global's principal place of business is in Michigan, and it is, therefore, a citizen of the states of Michigan and Delaware.

38.

Accordingly, the controversy between Plaintiffs and SRG Global and Guardian is between citizens of different states, and therefore, complete diversity exists as to Plaintiffs and the Corporate Defendants.

The Individual Defendants Should Not Be Considered in Assessing Diversity Because They Were Fraudulently Joined in an Attempt to Defeat Diversity.

39.

As set forth in the Complaint, the Individual Defendants are Georgia residents. (*Id.* ¶¶ 10, 11, 12, 13.)

40.

According to the Eleventh Circuit, "when a plaintiff named a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court.  In such a case, the plaintiff is said to have 'fraudulently joined' the non-diverse defendant." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (internal citations omitted).

41.

Fraudulent joinder exists where (1) "there is no possibility the plaintiff can establish a cause of action against the resident defendant," or (2) "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Jackson v. Bank of Am.*, 578 F. App'x. 856, 858 (11th Cir. 2014).

42.

Plaintiffs have not and cannot state a claim against the Individual Defendants and have fraudulently pled facts relating to Michael Anderson, Stephen Farrell, Nancy Betti, and Caanan Stewart.  As a result, the residence of the Individual Defendants cannot be considered.

43.

Plaintiffs have no facts to support their claims against the Individual Defendants.  As Ms. Ryan testified:

24

Q:     Now, why did you sue Michael Anderson?

**A:     What?**

Q:     Are you aware that you have sued someone by the name of
       Michael Anderson in this case?

**A:     My lawyers got a job to do, and they did it.**

[. . .]

Q:     What do you know about Mr. Anderson?

**A:     I don't know nothing about him.  Okay?**

Q:     Okay.  Do you know what his role is at SRG Global?

**A:     [No response.]**

Q:     Do you know what his role is at SRG Global?

**A:     The lawyers decided to do that.  Okay?  That's what we pay
       a lawyer for.**

Q:     Do you have any person information about who Mr. Anderson
       is or his involvement—

**A:     No.**

[. . .]

Q:     What about Mr. Farrell?  You also sued an individual by the
       name of Mr. Farrell.  Do you know who Mr. Farrell is?

**A:     No, I don't; but my lawyer does.**

[. . .]

Q:     But, again, with Mr. Farrell do you have any information on
       what you claim he did wrong?

**A:     Mister, I don't—if I see whoever it is, I don't even know
       who the hell it is; and I don't want to know.**

[. . .]

Q:     Okay.  Now, what about Nancy Betti?  You also sued an
       individual by the name of Nancy Betti.  Do you know Ms.
       Betti?

**A:     No, I don't.**

Q:     Have you ever met Ms. Betti?

25

**A:**    **No, I don't.**

Q:    Do you know anything about Ms. Betti?

**A:**    **No; but my lawyer—but my lawyer do.**

Q:    Okay. Do you have any personal information on what role she had at SRG Global?

**A:**    **[No response.]**

[. . .]

Q:    Now, if I ask all these same questions—we haven't gotten Mr. Stewart yet; but if I ask all those same questions, are you going to tell me that you don't know anything about Mr. Strwart, you don't [know] what he did wrong, what role he had [at] SRG Global?

**A:**    **Yes, sir. Ask my lawyer.**

[. . .]

Q:    So just to be clear then, you have no idea who any of the Individual Defendants are in this case or why you've sued them, correct?

**A:**    **I said ask my lawyers.**

[. . .]

Q:    Okay. But do you have any information that they actually were involved or did anything?

**A:**    **I have no information on me.**

Q:    Do you mean on them? You don't have any information about them, correct?

**A:**    **[No response.]**

Q:    Is that correct?

**A:**    **No, I don't.**

Q:    Okay. So you have no facts to support your claims against either Mr. Anderson, Mr. Farrell, Ms. Cormican, and Mr. Stewart, correct?

**A:**    **[No response.]**

[. . .]

Q:     I need a yes or no answer, Ms. Ryan.  Do you have any facts
       whatsoever—

**A:     I have nothing.**

(Ex. 2 at 74-75, 75-76, 77, 78, 80, 81, 82, 83, 86.)

44.

Plaintiffs allege that the Individual Defendants are liable solely because they

were supervisors at the SRG Global facility and were allegedly responsible for the

use and/or disposal of toxic chemicals.  (Ex. 1, ¶¶ 15–18, 22.)  These allegations

are insufficient and unsupported by sworn testimony from Plaintiffs themselves as

well as the Individual Defendants.

45.

In the State Complaint, Plaintiffs allege that Michael Anderson was a plant

manager of the SRG Global facility in Covington, Georgia, and had "supervisory

responsibilities of all operations, including the use, disposal and clean-up of toxic

chemicals, and the responsibility to promptly and accurately report to government

authorities all releases of toxic chemicals."  (*Id.* ¶ 15.)  However, as explained

above, Plaintiffs have no facts whatsoever to support these allegations, which are

directly contradicted by Mr. Anderson's testimony in the Federal Lawsuit.

46.

Michael Anderson was deposed on August 29, 2016 and September 1, 2016,

in the Federal Lawsuit.  (Deposition of Michael Anderson, attached as <u>Exhibit 15</u>.)

According to Mr. Anderson, as plant manager he was responsible for "running the facility," but he did not directly supervise waste disposal. (Ex. 15 (Anderson Dep.) at 32.)  Additionally, TCE was used as part of the degreasing process at the plant at different points in time.  However, Mr. Anderson testified that he never participated in the degreasing process and was not involved in the decision to stop purchasing TCE.  (*Id.* at 22–23, 30.)  He also never observed or participated in the cleaning of the tank that held the TCE, and he never witnessed any leaks of TCE. (*Id.* at 24, 28.)  He also was not involved in providing information or assisting in any environmental assessments or remediation efforts on behalf of the plant.  (*Id.* at 46, 60, 90.)

47.

Mr. Anderson also states that he has "not personally handled or disposed of any hazardous waste, including chlorinated solvents, during my time at SRG Global" and that he "never witnessed, directed, controlled, or participated in the improper disposal, dumping, or release of TCE or any other volatile organic compounds or chlorinated solvents at the SRG Global facility."  (Affidavit of Michael Anderson, attached as Exhibit 16, at ¶ 5.)

48.

Given this testimony, and the fact that Plaintiffs did not bring claims against Mr. Anderson in the Federal Lawsuit, Plaintiffs fraudulently pleaded facts relating

to Mr. Anderson to bring this action in state court.

49.

Plaintiffs allege that Nancy Cormican, Stephen Farrell, and Caanan Stewart were employees of SRG Global and were responsible for environmental matters "relating to prevention of releases of toxic chemicals, prompt clean up of releases of toxic chemicals and the reporting of releases of toxic chemicals to governmental authorities."  (Ex. 1, ¶¶ 16–18.)

50.

Mr. Farrell was deposed on July 27, 2016, in the Federal Lawsuit.[5] (Deposition of Stephen Farrell, attached as Exhibit 17.)  Mr. Farrell testified that he manages the environmental department and is responsible for disposal of wastes, permitting, and safety, including compliance with OSHA regulations.  (Ex. 17 (Farrell Dep.) at 12.)  He is not responsible for the environmental assessment or remediation efforts.  (*Id.* at 12–13.)  Most importantly, Mr. Farrell did not begin working at the plant until September 2012, at which time the plant had already banned the use of chlorinated solvents, including  TCE.  (*Id.* at 17, 25.)  Thus, he was not even employed at the time the solvents in question allegedly were released.

---

[5] Mr. Farrell was also deposed on November 20, 2020 in the State Actions.  His testimony in the State Actions was consistent with his testimony in the Federal Lawsuit.

51.

Mr. Farrell further states that he has "not personally handled or disposed of any hazardous waste, including chlorinated solvents, during my time at SRG Global," and he has "never witnessed, directed, controlled, or participated in the improper disposal, dumping, or release of TCE or any other volatile organic compounds or chlorinated solvents at the SRG Global facility." (Affidavit of Stephen Farrell, attached as Exhibit 18, at ¶ 5.) Mr. Farrell further states, "[t]o the best of my knowledge, during my time as environmental manager, all waste products, including volatile organic compounds and chlorinated solvents, were properly disposed of according to the waste permits obtained by SRG Global." (*Id.*)

52.

Given this testimony, and the fact that Plaintiffs did not bring claims against Mr. Farrell in the Federal Lawsuit, Plaintiffs fraudulently pleaded facts relating to Mr. Farrell to bring this action in state court.

53.

Defendant Cormican states that she has "not personally used or disposed of any hazardous waste, including chlorinated solvents, during my time at SRG Global," and she has "never witnessed, directed, controlled, or participated in the improper disposal, dumping, or release of TCE or any other volatile organic

compounds or chlorinated solvents at the SRG Global facility." (Affidavit of Nancy Cormican, attached as Exhibit 19, at ¶ 6.) She further states that "[t]o the best of my knowledge, during my time as the environmental health and safety manager, all waste products, including volatile organic compounds and chlorinated solvents like TCE, were properly disposed of according to the waste permits obtained by SRG Global." (*Id.*)

54.

Defendant Stewart states that he has "not improperly used or disposed of any hazardous waste, including chlorinated solvents, during my time at SRG Global," and he has "never witnessed, directed, controlled, or participated in the improper disposal, dumping, or release of TCE or any other volatile organic compounds or chlorinated solvents at the SRG Global facility." (Affidavit of Caanan Stewart, attached as Exhibit 20, at ¶ 6.) He further states that "[t]o the best of my knowledge, during my time as the environmental health and safety manager, all waste products, including volatile organic compounds and chlorinated solvents like TCE, were properly disposed of according to the waste permits obtained by SRG Global." (*Id.*)

55.

Under Georgia law, "an officer [or employee] of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, but

31

an officer [or employee] of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he **specifically directed the particular act to be done or participated or co-operated therein**." *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 411 (1973) (emphasis added). *See also Meredith v. Thompson*, 312 Ga. App. 697, 699 (2011) (applying same standard to nuisance, trespass, and negligence claims involving emission and disposal of toxic chemicals).

56.

Plaintiffs do **not** allege that the Individual Defendants personally disposed of the solvents at issue in this case. As a result, under Georgia law, the Individual Defendants can only be liable if they "specifically directed the particular act to be done or participated or cooperated therein." *Lincoln Land Co.*, 130 Ga. App. at 411. The sworn testimony from Mr. Anderson and Mr. Farrell in the Federal Lawsuit and the affidavits from the Individual Defendants demonstrate that they did not direct or participate in the release of the chemicals alleged in the State Complaint. As a result, Plaintiffs cannot state a claim against the Individual Defendants.

57.

Because Plaintiffs have not and cannot state a claim against the Individual Defendants, the residence of the Individual Defendants cannot be considered. *See*

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461–62 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.") (internal citations omitted); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (affirming district court's decision to disregard the citizenship of improperly joined parties where the plaintiff's egregious attempt to join improper parties constituted fraudulent joinder), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

58.

In the absence of the Individual Defendants, the real parties to the controversy are Plaintiffs and SRG Global.  As set forth above, Plaintiffs and SRG Global are diverse.

The Amount in Controversy Exceeds $75,000.

59.

A defendant who moves for removal to federal court must establish that the amount in controversy exceeds the jurisdictional requirement by a preponderance of the evidence.  *See Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

60.

The State Complaint generally seeks compensatory and punitive damages

33

for alleged injuries to Plaintiffs' properties arising from an alleged release of TCE at the SRG Global facility in Covington, Georgia.  (Ex. 1, ¶¶ 19-26, 27-34, 35-44, 45–53.)  Plaintiffs also seek unspecified damages for the "loss of their rights to the unimpaired use and enjoyment of their properties" as well as attorneys' fees and expenses of litigation.  (*Id.* ¶ 29, 36, 42.)  Plaintiffs also seek an unspecified amount for punitive damages "sufficient to punish the Defendants for their past conduct, and to deter Defendants from further like wrongful conduct in the future." (*Id.* ¶¶ 34, 43, 53.)   Plaintiffs also seek unspecified damages for their expenses of litigation and attorneys' fees under O.C.G.A. § 13-6-11.  (*Id.* ¶¶ 33, 42, 52.) Attorneys' fees are included to determine the amount in controversy if they are provided for by statute.  *See Federated Mut. Ins. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 n.4 (11th Cir. 2003); *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 974 (11th Cir. 2002).  Accordingly, a reasonable attorneys' fee should be included to compute the amount in controversy.

61.

In this case, Plaintiffs have not pleaded any amount of alleged damages, and—in an effort to avoid the jurisdiction of this Court—have thus far refused to specify any concrete amount of damages either in response to written discovery or during depositions.  Nevertheless, Ms. Ryan has provided sworn testimony that, in her opinion, her house has been *completely* devalued:

34

Q:     I'm asking you are you claiming that your house has been
       devalued?

A:     **My house value has gone away down to nothing.**

(Ex. 2 (Ryan Dep.) at 91 (emphasis added).)

62.

According to the State Complaint, Plaintiff Jenette Ryan owns property

located at 9287 Settlers Grove Road, Covington, Georgia 30014 ("Ryan

Property").  (Ex. 1, ¶ 2.)  Ms. Alexander, a licensed appraiser within the State of

Georgia, completed an appraisal for Ms. Ryan's property, which valued the

property at $135,000.00.  (Ex. 3.)  As a result, there is undisputed evidence that

Ms. Ryan is seeking diminution in value damages of at least $135,000.00.

63.

SRG Global denies that Plaintiffs were injured or otherwise are entitled to

damages.  However, based on Ms. Ryan's sworn testimony and the appraisal

submitted by Ms. Alexander, plus the value of Ms. Ryan's unspecified claims for

loss of use and enjoyment of her property, punitive damages, and statutory

attorneys' fees, Ms. Ryan's allegations would total more than $75,000.

Consequently, SRG Global has established by a preponderance of the evidence that

Ms. Ryan is seeking in excess of $75,000 in damages.

64.

The Court may exercise supplemental jurisdictional over the claims of the

remaining Plaintiffs.  *See, e.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) ("Once on plaintiff satisfies the amount-in-controversy requirement for diversity jurisdiction, the other plaintiffs come in under the court's supplemental jurisdiction regardless of whether their individual claims satisfy the requirements of § 1332."); *In re Exxon Chem. Fire*, 558 F.3d 378, 390 (5th Cir. 2009) (28 U.S.C. § 1367 provides supplemental jurisdiction over claims of plaintiffs who do not satisfy amount-in-controversy requirement); *Perkins v. Merion Realty Servs., LLC*, 2015 WL 998198, at *3 (M.D. Ala. Mar. 6, 2015) ("Only if one plaintiff's claims meet the jurisdictional minimum, will the court have diversity jurisdiction over the claims and be able to exercise supplemental jurisdiction over the claims of additional diverse plaintiffs.") (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) and *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1280 (11th Cir. 2001)).

## CONCLUSION

Complete diversity of citizenship exists between Plaintiffs and SRG Global. The Individual Defendants were fraudulently joined.  The amount in controversy exceeds $75,000.  Consequently, SRG Global requests that this Court exercise jurisdiction over this action in accordance with 28 U.S.C. § 1332, 1441, and 1446.

Respectfully submitted this 1st day of December 2021.

**KING & SPALDING LLP**

*/s/ Douglas A. Henderson*
Nicholas H. Howell
Georgia Bar No. 741064
Douglas A. Henderson
King & Spalding LLP
1180 Peachtree Street, NE, Ste. 1600
Atlanta, Georgia 30309
Phone: (404) 572-4600

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing ***Notice of Removal*** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 1st day of December 2021.

*/s/ Nicholas H. Howell*
Nicholas H. Howell